## Wood, Stubbs & Company v. Arterburn.

(Decided January 26, 1926.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, First Division).

1. Warehousemen—No Storage Could be Charged on Potatoes Sold to Warehouseman.—Where plaintiff stored potatoes for defendant, and testimony showed that plaintiff had purchased part of pota-

toes from defendant at $6 a barrel net, no storage could be charged defendant on potatoes taken by plaintiff under such agreement.

2. Sales—Acceptance of Purchase Price After Giving Option to Buy Ratifies Purchase.—Where defendant had stored potatoes in plaintiff's warehouse, giving plaintiff an option to buy them at $6.00 a barrel, which option was not withdrawn, acceptance by defendant of purchase price of part of potatoes ratified purchase.

3. Warehousemen—Owner of Potatoes Held Entitled to Recover as to Those on Which Warehouseman's Option to Purchase had Not Been Exercised Before Suit for Storage.—Where defendant stored potatoes with plaintiff, and gave plaintiff option to purchase them, which was exercised only as to part of potatoes, defendant is entitled to recover the value of potatoes sold by plaintiff on which option had not been exercised before bringing of suit for storage by plaintiff.

W. F. BAUMEISTER for appellant.

SAMUEL B. KIRBY and SAMUEL B. KIRBY, JR., for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—
Reversing.

The Wood, Stubbs & Company, a corporation, brought this action against Crawford Arterburn to recover $784.87, an alleged balance on an account for various articles of merchandise sold him by the plaintiff. In an amended petition it was alleged that the defendant stored with the plaintiff 325 bags of potatoes for a period of five months at five cents a bag and ten cents a bag for handling charges, making in all $113.05, for which the plaintiff also prayed judgment. By his answer the defendant, after controverting the allegations of the petition, pleaded as a counterclaim that about November 10, 1919, he stored with the plaintiff 285 barrels of potatoes, weighing 185 pounds each, less 10% for shortage which plaintiff agreed to hold for him on storage and as the market was favorable to sell for his account; that it was agreed that the plaintiff was to obtain the highest market price for the potatoes; that thereafter the plaintiff sold 35,320 pounds of the potatoes at seven cents a pound and paid him therefor the sum of three and one-third cents per pound, leaving due him $919.10; that the remaining 13,130 pounds of potatoes the plaintiff sold but failed to account to him therefor; that these last mentioned potatoes were sold about April 20, 1920, and had then a mar-

ket price of seven cents a pound, and at that price amounted to $1,295.04, for which and for $919.10 judgment was prayed on the counterclaim. By its reply the plaintiff alleged that it had bought all the potatoes from the defendant at three and one-third cents a pound or $6.00 a barrel and that the defendant was entitled to a further credit on his account for $437.67 for the 13,130 pounds of potatoes. The allegations of the reply were controverted. The case came on for trial before a jury. The proof for the plaintiff showed that the balance due it on its account, after giving the defendant the above credit to which he was entitled, was $460.25. The proof for the defendant was to the effect that he did not sell the potatoes to the plaintiff at $6.00 a barrel, and that the market price for potatoes gradually rose and later was about $12.00 a barrel. On this proof the circuit court gave the jury these instructions, to which the plaintiff excepted:

"As to the claim of Wood, Stubbs & Company against Arterburn:

"You will find for Wood, Stubbs & Company on account of the account concerning which you have heard the evidence including the matter of storage and claim for handling the potatoes and award it such sum as you may believe from the evidence is due and owing from the defendant not exceeding $460.25, and not less than $236.96.

"On any sum which you award you will allow interest at the rate of 6 per cent per annum from April 20, 1920.

"2. As to the counterclaim of Arterburn against Wood, Stubbs & Company:

"If you believe from the evidence that Wood, Stubbs & Company took the potatoes of Arterburn on storage under an agreement to sell the potatoes for him at the best market price, then you should award Arterburn as against Wood, Stubbs & Company such sums as you believe from the evidence fairly represents the difference between what you may believe from the evidence was the best market price and $1,614.00, which was the price paid by the plaintiff to defendant for 48,450 lbs. of potatoes at 3 1/3 cts. per lb., the award not to exceed $1,773.26.

"Unless you believe from the evidence that such was the agreement, you should find for Wood, Stubbs & Company on Arterburn's counterclaim.

"If you believe from the evidence that by agreement Wood, Stubbs & Company, Arterburn sold his potatoes to Wood, Stubbs & Company at $6.00 per bbl., then you should find for Wood, Stubbs & Company on Arterburn's counterclaim."

The jury found for the plaintiff on its account. $460.25, and found for the defendant on his counterclaim $1,200.00. The court entered judgment on the verdict and refused a new trial. The plaintiff appeals.

It is earnestly insisted that the plaintiff's agent, Huber, who made the transaction with Arterburn about the potatoes, testifies that he bought the potatoes for $6.00 a barrel, and that the defendant's testimony read in connection with his deposition given on cross-examination does not substantially contradict Huber. But while the defendant's testimony is unsatisfactory it is confirmed by the fact that plaintiff charged Arterburn with storage on the potatoes for five months. The potatoes were put in the warehouse late in November and five months would run over until some time in April. The transaction between Huber and Arterburn took place about January 1st, and if the plaintiff had bought the potatoes, clearly it should not thereafter have charged Arterburn with storage on them. In addition to this, nothing was paid and no credit was given the defendant on his open account for the potatoes at that time. The peremptory instruction was therefore properly refused.

The objection that the verdict is palpably against the evidence is more formidable. Arterburn in his own testimony thus states what took place between him and Huber: "Well, it was along in January; I happened to come down from Bloomfield and I asked him what kind of prices they were and he said, 'Well, they are going up a little.' I said, 'Mr. Huber, whenever the potato price gets high enough to net me $6.00 a barrel and taking the warehouse receipt, why go ahead and use the potatoes.' " Again, on cross-examination, when asked what was the agreement he had with Huber, he says this: "He was to use the potatoes at $6.00 a barrel, that is, to net me $6.00 a barrel." Huber says this: "Well, I was to handle the potatoes or I bought the potatoes I would say at $6.00 per barrel or 180 pounds. This is the only time I talked to Arterburn about those potatoes. We then used the potatoes; went ahead and shipped them out pursuant to the contract I had with Arterburn."

There is very little difference in the testimony of these two witnesses as to what occurred between them. Neither of them shows that there was a sale of the potatoes, but the defendant's evidence no less than Huber's showed that he agreed with Huber that whenever the potato price got high enough to net him $6.00 a barrel they could go ahead and use the potatoes. This did not constitute a sale, but it was an offer to sell, and a sale was made if the offer was thereafter accepted before it was withdrawn and Arterburn was notified of the acceptance of the offer. There was no further communication between the parties; the plaintiff went on and used the potatoes, and on April 21 Arterburn came in again. At that time his account was credited by part of the proceeds of 32,320 pounds of potatoes at 3 1/3 cents a pound, which is $6.00 a barrel, and he was given a check for the balance of the proceeds, $524.00, which he cashed without objection. Being asked on cross-examination about this transaction he answered as follows:

"Q. You did accept cash and credit for the 35,320 pounds, didn't you, at three and a third cents a pound? A. I don't know how many pounds it was; I don't remember.

"Q. Did you raise any question about it at that time? A. About the price of it?

"Q. Yes. A. No, sir, because I never figured how many pounds it was, or what the price was.

"Q. You did not make any complaint until after the suit was filed, did you? A. No, sir."

He also makes these statements:

"Q. According to your contention you were paid up to time your answer was filed for the 35,320 pounds at three and a third cents a pound, were you not, or $6.00 a barrel, that is, what Mr. Huber used? A. Yes, sir, I think it was that; I had no books.

"Q. There is a balance of 13,130 pounds that you claim you have not been paid for? A. I think it was something like that."

There is no dispute in the evidence that the potatoes were originally deposited in the warehouse simply on storage, because Arterburn could not use that winter the cellar in which he had previously stored his potatoes.

There is no evidence at all of any change in the arrangement except the transaction between Arterburn and Huber in January, above set out. The next thing that occurred was the transaction when the check was given for $524.00. There is no evidence at all that there was at any time an agreement that the plaintiff should sell the potatoes as the agent of Arterburn. The only evidence is that he agreed that the plaintiff might use the potatoes when they would net Arterburn $6.00 a barrel. Under this arrangement no storage could be charged Arterburn on the potatoes which the plaintiff used thereunder, for Arterburn was to have $6.00 a barrel net. At the time they met in April it had used 35,320 pounds of the potatoes.

The remainder of the potatoes were not settled for then, because they had not been sold. The plaintiff was not a commission merchant. It was simply a warehouseman and also ran a store in another place in which it sold potatoes. There is nothing in the evidence showing that it undertook to sell these potatoes for Arterburn at the best market price. The whole of the evidence is that the potatoes were stored in its warehouse and it was given an option to buy them at $6.00 a barrel. This option could be withdrawn at any time before it was accepted. But it was not withdrawn, and without objection on April 21st, Arterburn ratified its purchase of 35;320 pounds of the potatoes at $6.00 a barrel by accepting the credit on his account and cashing the check for the balance of the price of this part of the potatoes. There was no trouble between the parties until later in the year. Under the evidence Arterburn was entitled to nothing as to the 35,320 pounds of potatoes beyond the contract price, $6.00 a barrel net, but as to the 13,130 pounds of potatoes he was entitled to recover. The offer as to these was not accepted. The suit was filed for the full amount of the account and this was alleged to be wholly unpaid. So far as appears, as to the remainder of the potatoes appellant at no time exercised its option until after this suit was brought.

Appellee had given Huber an option to use the potatoes and pay him $6.00 a barrel for them. When his offer was accepted on 35,320 pounds of them and he did not disaffirm the acceptance, the contract was complete and the sale was consummated. If he had refused then to ratify what had been done on the faith of his agreement with Huber, the plaintiff might have taken steps to protect it-

self. He could not accept and cash the check without rat-ifying the sale; for there was no other consideration for it. Though there was no sale of any of the potatoes up to April 21st, there was a sale of 35,320 pounds of them on that day. He then knew that Huber had accepted his offer to him to use the potatoes and pay him $6.00 a bar-rel for them. His silence and acceptance of the price was necessarily an agreement on his part to stand by what had been done, for he could not keep the potatoes and the money too. But as to the 13,130 pounds of pota-toes the rule is different.

Judgment reversed and cause remanded for a new trial.